| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>UNITED STATES OF AMERICA<br><br>-against-<br><br>JONATHAN VASQUEZ,<br>    a/k/a "Totao,"<br><br>                        Defendant. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: _5/19/2025_<br><br>25 Cr. 177-2 (AT)<br><br>**ORDER** |

ANALISA TORRES, District Judge:

Defendant, Jonathan Vasquez, appeals from the Honorable Jennifer E. Willis' April 23, 2025 oral order detaining him pending trial. *See* ECF No. 12; Mot., ECF No. 20. The Government opposes the appeal. *See* Opp., ECF No. 30. For the reasons stated below, Judge Willis' detention order is AFFIRMED.

## BACKGROUND[1]

Local law enforcement officers in Yonkers arrested Vasquez in January 2025 after allegedly finding about 70 baggies of cocaine on his person. Tr. at 10:6–8, ECF No. 15-3. He was released pretrial and his state charges remain pending. *Id.* Since his arrest, he has made "at least a few" court appearances in the Yonkers case. *Id.* at 28:18–19.

On April 23, while Vasquez was on pretrial release, federal officers arrested him in connection with the alleged narcotics trafficking conspiracy that both pre- and post-dates his Yonkers arrest. *Id.* at 9:6–15; Indictment, ECF No. 1. Count One of the indictment charges Vasquez and a co-defendant, Christopher Pena, with conspiring to distribute fentanyl in this

---

[1] The following is drawn from the parties' representations at Vasquez's April 23 presentment before Judge Willis, his initial appearance before the undersigned on May 5, and the parties' written submissions on bail. *See* 18 U.S.C. § 3142(f)(2) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at [a] [bail] hearing."); *United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004).

District from November 2024 through at least in or about April 2025.  Indictment ¶ 1; *see* Opp. at 1–2.

Federal law enforcement officers intended to arrest Vasquez in connection with the indictment on April 18.  *See* Opp. at 3.  That morning, they located his vehicle in the Bronx.  *Id.*  Inside were two occupants who claimed that they were on their way to "meet a friend," whom they did not identify.  *Id.*  The officers located Vasquez's passport inside the vehicle and confiscated it.  *Id.*  After failing to find Vasquez at his residence later that day, the officers contacted him to arrange for his self-surrender.  *Id.*  They also spoke with a lawyer who stated that he had not yet been retained to represent Vasquez but had provided him with instructions on how to turn himself in.  *Id.*  After back-and-forth communications between the lawyer, the officers, the AUSA assigned to this matter, and Vasquez, it was agreed that Vasquez would self-surrender on April 21.  *Id.* at 3–4; *see* ECF No. 30-1 at 1 (April 28 text message from Vasquez to law enforcement stating, "I'm going to surrender myself to you guys Monday morning, 10 AM I'll be there 1000%").

Vasquez did not self-surrender on April 21, nor did he return to his residence in the Bronx.  Opp. at 4.  Instead, from April 19 to April 23, he moved between various locations, hotels, and residences in Manhattan, the Bronx, Queens, and Brooklyn, including some in the vicinity of John F. Kennedy International Airport ("JFK").  *Id.*; Tr. at 8:22–9:5.  Officers finally located Vasquez on April 23, inside a vehicle near his girlfriend's residence in Brooklyn, and arrested him.  Opp. at 4.

After lengthy oral argument at Vasquez's presentment, Judge Willis remanded him to the custody of the Bureau of Prisons pending trial.  *See generally* Tr.  Judge Willis based her decision "on both flight [risk] and danger" to the community.  *Id.* at 28:12.  As to flight risk,

2

Judge Willis emphasized that Vasquez allegedly participated in the federally-charged drug distribution conspiracy while on pretrial release in the Yonkers matter. *Id.* at 28:20–29:12. She found it "extremely concerning" that Vasquez failed to turn himself in as agreed, and that "associates of [his], while driving [his] car, were in possession of [his] passport at a time . . . that overlaps [with] when the [G]overnment says [he was] driving . . . near [JFK] and perhaps [was] at a hotel near [JFK]." *Id.* at 29:20–30:3. Ultimately, Judge Willis concluded that no combination of conditions of release could reasonably allay her concerns regarding Vasquez's risk of flight. *Id.* at 30:4–5.

## DISCUSSION

I. <u>Legal Standard</u>

A district court reviews *de novo* a magistrate judge's decision to release or detain a defendant. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Jones*, 566 F. Supp. 2d 288, 289–90 (S.D.N.Y. 2008). Ordinarily, a defendant is to be released pending trial unless the court finds that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant or the safety of any other person in the community. 18 U.S.C. § 3142(e). When there is probable cause to believe that the defendant committed a drug offense for which the maximum term of imprisonment is ten years or more, the bail statute establishes a rebuttable presumption that the defendant poses danger to the community and will not appear for trial. *Id.* § 3142(e)(3)(A).

In presumption cases, the initial burden of production falls on the defendant, who must introduce "some evidence" rebutting the presumption of dangerousness and flight risk. *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991). If the defendant produces such evidence, "the presumption, rather than disappearing altogether, continues to be weighed along with [the]

3

other factors to be considered when deciding whether to release a defendant." *Id.* Those factors include: (1) the nature and circumstances of the offense, including whether the offense involves a controlled substance; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of any danger the defendant poses to the community. 18 U.S.C. § 3142(g). At all times, the Government retains the ultimate burden of persuasion to establish that the defendant poses a danger to the community by clear and convincing evidence or a flight risk by a preponderance of the evidence. *Rodriguez*, 950 F.2d at 88.

II.     Analysis

Having considered Vasquez's appeal, the Government's opposition, and Judge Willis' detention order, the Court finds that the Government has met its burden to establish by a preponderance of the evidence that Vasquez poses a risk of flight, and that no release conditions will reasonably assure his appearance.

The parties agree that the presumption in favor of detention applies based on the charge in the indictment. *See* Mot. at 4; Opp. at 5; *see also* 18 U.S.C. § 3142(e)(3)(A). Vasquez argues that he has produced at least "some evidence" that he does not pose a risk of flight and, therefore, has rebutted the presumption. *Rodriguez*, 950 F.2d at 88; Mot. at 6–8. The evidence he cites includes that he intended to turn himself in at a later date than he originally agreed to with law enforcement because he wished to attend a scheduled Yonkers appearance, but failed to properly communicate that intent to law enforcement; that he has "incredibly strong ties to the community," including a young child who resides with the child's mother; that the Government has custody of his passport; and that Pretrial Services recommends that he be released subject to a bond co-signed by three financially responsible individuals, GPS-monitored home

4

incarceration, and drug treatment. Mot. at 7; Tr. 17:23–24, 22:6–7.

Assuming without deciding that the foregoing is sufficient to rebut the statutory presumption of flight risk, the Court finds that the remaining § 3142(g) factors, including the presumption against release, weigh in favor of detention. *See Rodriguez*, 950 F.2d at 88 (explaining that, even if the presumption in favor of detention is rebutted, the Court must "continue" to weigh the presumption "along with [the] other factors to be considered when deciding whether to release a defendant").

First, Vasquez is charged with a serious offense—conspiring to distribute narcotics in violation of 21 U.S.C. § 846. Indictment at 1. The indictment alleges that the conspiracy lasted at least six months and that the controlled substance involved in the offense was 400 grams or more of mixtures and substances containing a detectable amount of fentanyl, a particularly lethal drug that causes significant harm to the community. *See id.*; Opp. at 6. The charge carries the extremely serious penalty of a mandatory minimum ten-year sentence, and the Government represents that Vasquez is unlikely to qualify for safety-valve relief. *See* 21 U.S.C. § 841(b)(1)(A)(vi); Tr. 11:23–12:5.

Second, the Government's representations suggest that there is at least moderate evidence to support the charge in the indictment.[2] Vasquez is presumed to be innocent. The Government has, however, provided photos that were taken inside his apartment that appear to show suspected drugs in small baggies, as well as drug-related paraphernalia, including scales, empty glassines, and xylazine test strips. Opp. at 2–3. As the Court stated during the May 5 initial appearance, the Government has adduced similar evidence concerning Vasquez's co-defendant,

---

[2] The Court expresses no view as to Vasquez's safety-valve eligibility or the merits of this case; it merely accords some weight to the Government's representations, at this early stage of the proceedings, to the extent those representations bear on the issue of bail.

Pena. The Government also represents that Vasquez made a potentially incriminating post-arrest statement that could be construed to suggest that he manages drug distribution while Pena handles weapons. *See* Opp. at 4.

Third, Vasquez's history and characteristics also weigh in favor of detention. On the one hand, he has a young child whom he looks after, and he has a positive relationship with his own mother, who lives in the District. On the other hand, Pretrial Services reports that Vasquez has multiple drug-related arrests and convictions dating back about ten years and at least one prior bench warrant. Additionally, the Government represents that, since he was arrested in connection with the instant offense, Vasquez has made recorded jail calls in which he appears to have threatened to go after any "snitches" if he is released. *Id.* at 7. As Judge Willis stated on April 23, it is "very troubl[ing]" that Vasquez failed to turn himself in as agreed, failed to communicate that he would not turn himself him (or that he planned to do so at a later date), and is alleged to have committed the instant offense while on pretrial release in the Yonkers matter. Tr. at 29:20. These facts suggest that Vasquez poses a risk of flight even under the most stringent conditions of pretrial release.[3]

Weighing the above factors, including the presumption of detention, and considering all the evidence, the Court finds that the Government has met its burden to establish that Vasquez poses a serious risk of flight by a preponderance of the evidence, and that no conditions could reasonably assure his appearance in this matter.

---

[3] Although the Court's decision to detain is not based on dangerousness, to the extent the Court is required to consider potential dangerousness under 18 U.S.C. § 3142(g)(4), the Court agrees with Judge Willis that Vasquez's failure to surrender as agreed and his alleged commission of the instant offense while on pretrial release provide some evidence of risk to others. *See* Tr. at 29:8. The alleged post-arrest statements described by the Government provide further evidence of potential danger to others. *See* Opp. at 4, 7.

6

## CONCLUSION

For the foregoing reasons, Judge Willis' detention order, ECF No. 12, is AFFIRMED.

SO ORDERED.

Dated: May 19, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge